O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **ROBERT LATHAM,** | **Case No.: SA CV 16-0561-DOC (PLAx)** |
|     **Plaintiff,** | |
| | |
|     **vs.** | |
| | **ORDER GRANTING IN PART** |
| **CAMBRIA COMPANY LLC,** | **DEFENDANT'S MOTION FOR** |
|     **Defendant.** | **SUMMARY JUDGMENT [21];** |
| | **STRIKING PLAINTIFF'S CROSS-** |
| | **MOTION FOR SUMMARY** |
| | **JUDGMENT [23]** |

Before the Court are Defendant Cambria Company LLC's ("Cambria" or "Defendant") Motion for Summary Judgment or Partial Summary Judgment ("Motion") (Dkt. 21) and Plaintiff Robert Latham's ("Latham" or "Plaintiff") Cross-Motion for Partial Summary Judgment ("Cross-Motion") (Dkt. 23).

## I.      FACTS[1]

Defendant Cambria manufactures, distributes, and sells quartz surfaces for various uses. Plaintiff's Statement of Genuine Disputes of Material Facts ("Pl.'s SGDMF") (Dkt. 24) No. 1. Defendant hired Plaintiff in September 2013 as a Regional Account Representative ("RAR"). *Id.* No. 2. The primary job function of an RAR is to "manage, investigate[,] and resolve customer claims." *Id.* No. 12. The RAR is a "critical position for the company." *Id.* To perform their duties, RARs use a computer platform called Salesforce to manage customer claims. *Id.* No. 13. RARs work between eight to ten hours a day, the majority of which is spent typing, including inputting notes and information into Salesforce. *Id.* No. 16. The parties dispute whether RARs must often spend eight hours a day typing in order to complete all of their assigned tasks. *Id.* No. 17. The parties also dispute whether it is essential that RARs be able to speak on the phone while simultaneously typing into Salesforce. *Id.* No. 18.

On September 4, 2014, Plaintiff injured himself while attending Cambria's national sales meeting. *Id.* No. 3. During the event, Plaintiff engaged in a game where he drank a beer, placed the end of a bat on his forehead, and spun himself around for the number of seconds it took for him to drink the beer. *Id.* No. 4. Plaintiff fell after performing this activity and injured his shoulder. *Id.* No. 5.

On September 8, 2014, Plaintiff reported his accident to Defendant and filed a worker's compensation claim. Reply to Plaintiff's Statement of Genuine Disputes of Material Fact ("Def.'s Reply to SGDMF") (Dkt. 29) No. 59. On September 10, 2014, Plaintiff saw a doctor and was placed on "light duty," which meant he was barred from typing and limited to only

---

[1] Unless the Court indicates otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

light lifting. Pl.'s SGDMF No. 6. On September 17, 2014, Plaintiff's doctor placed him "off work." *Id.* No. 7.

On September 25, 2014, Plaintiff's doctor allowed him to return to work, with restrictions: he was allowed to work from home, for no more than twenty hours per week, and with typing of no more than one hour per day. *Id.* No. 9. Plaintiff began working part-time from home on September 25, 2014. *Id.* No. 21. Defendant asserts, and Plaintiff disputes, that Plaintiff fell behind in his work during the week he spent working at home. *Id.* No. 22. On October 3, 2014, Defendant placed Plaintiff on medical leave; Plaintiff did not work again until sometime in December 2014. *Id.* No. 24. On October 9, 2014, Plaintiff's doctor restricted Plaintiff to lifting no more than five pounds and no "over the shoulder use." *Id.* No 10.

At some point during this leave, Defendant hired someone to replace Plaintiff in the RAR role. Def.'s Reply to SGDMF No. 75. As Plaintiff's return to work approached, various members of Defendant's upper level management communicated about what to do with Plaintiff. Martin David, Defendant's CEO, told management to "[h]ave him paint every wall . . . and then when he's done with that, have him paint the . . . walls again." Pl.'s SGDMF No. 78. John Brekke ("Brekke"), the President of Cambria California, emailed management and asked "[i]f we put [Plaintiff] in a new position and later determine it isn't working out, how long do we need to keep him employed before moving on? 90 days?" *Id.* No. 81.

Before his injury, Plaintiff worked ten-hour work days and sometimes worked between twelve- and fourteen-hour days. *Id.* No. 19. Plaintiff argues that this was because he inherited a backlog of unresolved claims, and that his workdays were significantly shorter in the period immediately preceding his injury. *Id.*

In December 2014, Defendant created a position called Quality Assurance Manager ("QAM"), which it asserts it created as an accommodation to Plaintiff. *Id.* No. 25. Defendant asserts that the QAM position was consistent with Plaintiff's work restrictions, because it did not require typing for more than an hour per day, lifting more than five pounds, or "over the shoulder use." *Id.* No. 27. Defendant asserts that the primary function of the QAM position was to "ensure the quality of Cambria's slabs before they were sent out to customers," and that the

QAM's essential duties were to "select, match, and photograph and verify slab quality." *Id.* No. 28.

Two people are generally required to move quartz slabs at Defendant's Los Angeles distribution center—one operates the forklift, while the other guides the slabs as they are suspended in the air. *Id.* Nos. 30, 31. Forklift operation did not violate any of Plaintiff's work restrictions, and Defendant had Plaintiff operate the forklift as part of his duties as the QAM. *Id.* Nos. 32, 33. However, Plaintiff informed his supervisor that operating the forklift caused him pain. *Id.* No. 34. The parties dispute how many times Plaintiff had to report his pain before Plaintiff was allowed to stop operating the forklift. *Id.* Plaintiff's supervisor then asked other Cambria employees to position the slabs for Plaintiff, so that Plaintiff could inspect and photograph that slabs. *Id.* No. 35. Plaintiff then informed his supervisor that taking photographs caused him pain. *Id.* No. 36. Plaintiff asserts that this is because Plaintiff had to "get on his hands and knees," "contort his body to odd angles," and "adjust the heavy slabs by pushing them with his injured arm" in order to get the lighting "just right." *Id.* The parties dispute how many times Plaintiff had to report his pain before Plaintiff was allowed to stop photographing the slabs. *Id.* No. 37. The pain that Plaintiff experienced as a result of these tasks caused him to leave work early, arrive late, and miss entire days of work. *Id.* No. 38.

Defendant asserts that Plaintiff also informed his supervisor that he is colorblind, which would preclude Plaintiff from being able to discern colors in the slabs—an essential part of the QAM role. *Id.* No. 39. Plaintiff disputes that he ever reported that he was colorblind. *Id.*

At some point Plaintiff was no longer required to operate the forklift or photograph the slabs, and was instead ask to perform "various menial tasks" so that Plaintiff "would have things to do during the day." *Id.* No. 40. Plaintiff asserts that these tasks were assigned "to make life difficult" for Plaintiff—for example, Plaintiff alleges that he was asked to move items that weighed thirty and seventy-five pounds, load four-by-fours onto a truck, and sweep the floor with a push broom. *Id.*

On July 30, 2015, Plaintiff's doctors modified his work status to four-hour work days, on top of the typing and lifting restrictions. *Id.* No. 42. On August 13, 2015, Plaintiff sent his

supervisor a doctor's note that placed Plaintiff on total temporary disability until August 27, 2015. *Id.* No. 43. Although Plaintiff does not dispute the existence or content of this letter, he does argue that he was actually "fully able" to fulfill the requirements of the RAR position or "other job assignments." *Id.*

On August 17, 2015, Defendant sent Plaintiff a "Notice of Eligibility and Rights & Responsibilities (Family and Medical Leave Act)" and a "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)." *Id.* No. 44. Defendant requested that the forms be completed and returned by September 2, 2015. *Id.* Plaintiff never completed the forms. *Id.* No. 45.

On August 27, 2015, Plaintiff's doctor extended his total temporary disability status to September 3, 2015. *Id.* No. 46. Defendant approved FMLA leave for Plaintiff, effective August 13, 2015. *Id.* No. 48. On September 26, 2015, Plaintiff's doctor extended Plaintiff's total temporary disability status for an additional four weeks. *Id.* No. 49.

On November 6, 2015, Plaintiff underwent a shoulder arthroscopy. Def.'s Reply to SGDMF No. 101. Plaintiff was terminated on or about November 6, 2015, on the day after his FMLA leave expired. Pl.'s SGDMF No. 50. The parties disagree as to whether there was a vacant position available at Cambria at the time of Plaintiff's termination. *Id.* No. 51. Plaintiff remained in total temporary disability status until about August 2016. *Id.* No. 53.

## II.   PROCEDURAL HISTORY

Defendant removed this case from San Bernadino Superior Court on March 25, 2016 (Dkt. 1). Plaintiff brings nine claims against Defendant: (1) disability discrimination in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(a); (2) perceived disability discrimination in violation of FEHA; (3) failure to accommodate disability under FEHA, Cal. Gov't. Code § 12490(m); (4) failure to engage in the interactive process, under FEHA, Cal. Gov't. Code § 12940(n); (5) failure to prevent discrimination under FEHA, Cal. Gov't. Code § 12940(k); (6) retaliation in violation of Cal. Gov't. Code § 12945.2(l)(1) ("CFRA") and 2 Cal. Code Regs. § 11094; (7) retaliation in violation of FEHA; (8) wrongful

termination in violation of public policy; and (9) declaratory relief. *See generally* Complaint ("Compl.") (Dkt. 1-2).

Defendant filed the instant Motion on November 21, 2016. Plaintiff filed his Opposition and the instant Cross-Motion on November 28, 2016. Defendant replied on December 5, 2016 ("Reply") (Dkt. 27).

### III.    LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P.

56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

## IV.   DISCUSSION

### A.   Disability Discrimination under FEHA

#### 1.   Actual and Perceived Disability Discrimination (Claims 1 and 2)

The California Supreme Court has adopted the tripartite burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) to analyze disparate treatment claims under FEHA. *Stewart v. Boeing Co.*, No. CV 12-05621-RSWL-AGR, 2013 WL 6839370, at *5 (C.D. Cal. Dec. 23, 2013) (citing *Lawler v. Montblanc North America*, 704 F.3d 1235, 1242–44 (9th Cir. 2013)); *see also McInteer v. Ashley Distribution Servs., Ltd.*, 40 F. Supp. 3d 1269, 1280 (C.D. Cal. 2014) (quoting *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000)). "Under *McDonnell Douglas,* the plaintiff has the initial burden of establishing a prima facie case of discrimination or retaliation." *Stewart*, 2013 WL 6839370, at *5 (citation omitted). Once a prima facie case is demonstrated, "the burden shifts to the defendant to show that the adverse employment action was taken for a legitimate, nondiscriminatory reason." *Id.* (citation omitted). If defendant satisfies this burden, the plaintiff must demonstrate that the proffered reason is mere pretext for discrimination. *Id.* (citation omitted).

"However, when an employer moves for summary judgment as to a plaintiff's FEHA claims, the employer bears the initial burden." *Id.* (citing *Lawler*, 704 F.3d at 1242); *see also Dep't of Fair Emp't & Hous. V. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) ("*Lucent*"). Therefore, "[t]o prevail on summary judgment, [the employer] is required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Stewart*, 2013 WL 6839370, at *5 (quoting *Lawler*, 704 F.3d at 1242) (internal quotation marks omitted). If the employer satisfies its burden, "the plaintiff must demonstrate

either 'that the defendant's showing was in fact insufficient . . . or that there was a triable issue of fact material to the defendant's showing.'" *Id.* (quoting *Lucent*, 642 F.3d at 746). The plaintiff can meet this burden "by produc[ing] substantial responsive evidence that the employer's showing was untrue or pretextual." *Id.*

To establish a prima facie case of disability discrimination under California Government Code Section 12940(a), a plaintiff must show that "(1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 496 (9th Cir. 2015) (citation omitted). At summary judgment, the "requisite degree of proof necessary to establish a prima facie case . . . is minimal." *Holtzclaw v. Certainteed Corp.*, 795 F. Supp. 2d 996, 1018 (E.D. Cal. 2011) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 2004)) (internal quotation marks omitted).

### a. Plaintiff's Prima Facie Case

FEHA "does not prohibit an employer from . . . discharging an employee with a physical or mental disability . . . where the employee, because of physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations." Cal. Gov't Code § 12940(a)(1). "'Essential functions' means the fundamental job duties of the employment position the individual with a disability holds or desires . . . [and] does not include the marginal functions of the position." Cal. Gov't Code § 12926(f). "'Marginal functions' of an employment position are those that, if not performed, would not eliminate the need for the job or that could be readily performed by another employee or that could be performed in an alternative way." 2 Cal. Code Regs. § 11065.

> (1) A job function may be considered essential for any of several reasons, including, but not limited to, any one or more of the following:
>
> > (A) . . . the reason the position exists is to perform that function.
> >
> > (B) . . . the limited number of employees available among whom the performance of that job function can be distributed.

(C) The function may be highly specialized, so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

(2) Evidence of whether a particular function is essential includes, but is not limited to, the following:

(A) The employer's judgment as to which functions are essential.

(B) Written job descriptions prepared before advertising or interviewing applicants for the job.

(C) The amount of time spent on the job performing the function.

(D) The consequences of not requiring the incumbent to perform the function.

(E) The terms of a collective bargaining agreement.

(F) The work experiences of past incumbents in the job.

(G) The current work experience of incumbents in similar jobs.

*Id.*

Defendant argues that Plaintiff's FEHA causes of action fail because Plaintiff cannot establish the second element of the prima facie case of disability discrimination. Mot. at 8. Specifically, Defendant asserts that Plaintiff "could perform neither the QAM nor RAR jobs because of his workplace injuries." *Id.* Defendant argues that, during the relevant time period, Plaintiff "remained under medical restrictions that prevented him from performing" the RAR job functions. *Id.* at 9. Indeed, notwithstanding Plaintiff's apparent feeling that he could have performed the job functions, it is undisputed that Plaintiff was on temporary total disability and remained in that status for about nine months after his termination.[2] Pl.'s SGDMF No. 53.

Defendant also argues that the QAM position—originally created as an accommodation for Plaintiff—was eventually eliminated because Plaintiff "simply was not able to perform the

---

[2] Plaintiff argued at the hearing, and in the papers, that Plaintiff's worker's compensation classification does not relieve Defendant of its duties under FEHA. *See* Opp'n at 14. The Court agrees. However, as discussed in greater detail below, the Court finds that Plaintiff has presented no evidence that he could fulfill the RAR role, with or without reasonable accommodation. Further, the Court finds no evidence of when, if ever, Plaintiff would have been able to fulfill the RAR role.

physical tasks including lifting and moving the slabs," driving a forklift, or photographing slabs. Mot. at 9. Finally, Defendant emphasizes that running various menial errands—to which Plaintiff was eventually reduced—was not "commensurate with the salary Cambria paid him." *Id.*

In response, Plaintiff argues that there is "a genuine issue as to the essential functions of RAR position," "the importance of typing as an RAR," and "what the QAM position actually entailed[] and whether this was . . . an attempt by Cambria to appear to accommodate [Plaintiff] without really doing so." Opp'n at 13. To support these arguments, Plaintiff points out that the official RAR job description does not list long hours, full-time work, in-office (as opposed to at home) work, or extended typing as requirements of the job. *Id.* Plaintiff argues that typing was a "marginal function" of the RAR position because "voice recognition software, transcription[,] or dictation are alternative ways to input data." *Id.* Plaintiff argues that "[a] jury could find that the real essential duty is data entry, not typing." *Id.*

Written descriptions of a position are not dispositive, but are only one factor in determining whether a duty is essential. *See* 2 Cal. Code Regs. § 11065(2)(B). Further, whether or not typing is an essential RAR function is not a material dispute. The Court need not decide whether typing itself is an essential function of the RAR position—the briefing makes clear that entering data into Salesforce (presumably most often through typing) was an essential function within the meaning of the statute. Thus, the issue is whether Plaintiff could fulfill the essential function of entering data into Salesforce at the rate and volume required of an RAR.

Plaintiff bears the burden of proving the second element of the prima facie case—that is, that he was able to do either the RAR or QAM job, either with or without reasonable accommodation. *See Green v. State*, 42 Cal. 4th 254, 264 (2007). As to the RAR position, Plaintiff relies heavily on his own declaration regarding his opinion of how long he needed to work each day and whether simultaneous text entry and phone calls are required of RARs. *See* Pl.'s SGDMF Nos. 16–18. Whether the essential function is described as data entry or typing, Plaintiff has not demonstrated that he could perform this RAR task both within his work limitations *and* with or without an accommodation. Plaintiff merely declares that "at all times

when [he] had work restrictions, he felt he could perform the essential functions of the RAR position" and he "also felt (and still feels) that voice recognition software, dictation, or transcription would have greatly helped his typing restriction." Plaintiff's Compendium of Exhibits (Dkt. 26) Ex. 1 (Latham Declaration) ¶¶ 11, 15. He does not explain how any of these methods would have fit within his twenty-hour-per-week or four-hour-per-day work restrictions. Nor does Plaintiff offer any evidence that these accommodations would have actually allowed him to fulfill the data entry requirements of the RAR position. Thus, the Court finds that, to the extent Plaintiff's discrimination claims are based on the RAR position, Plaintiff has failed to demonstrate that Defendant's showing is insufficient, or that there is a triable issues of material fact as to the second element of the prima facie case.

Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's actual and perceived disability discrimination claims (Claims 1 and 2), as they relate to the RAR position.

As to the QAM position, Plaintiff does not argue he would have been able to perform the forklift operation and slab photography aspects of the QAM role with reasonable accommodation. Rather, he argues that there are no defined duties of the QAM position and that the creation of the QAM position was not a genuine attempt to accommodate Plaintiff. *See* Opp'n at 13. Plaintiff declares that his immediate supervisor "confirmed that [Plaintiff] would only do supervising and paperwork and would not lift anything over 5 lbs." Opp'n at 14. Plaintiff alleges that despite this confirmation, he was "routinely assigned . . . physical work that caused him pain and violated his lifting restriction" while in the QAM position. *Id.* Plaintiff does not specify the nature of this work. However, Plaintiff separately alleges that at some point he was asked to move items that weighed thirty and seventy-five pounds, load four-by-fours onto a truck, and sweep the floor with a push broom. Pl.'s SGDMF No. 40.

In moving for summary judgment, Defendant asserts that the essential duties of the QAM role were to "select, match, photograph, and verify slab quality" before the slabs were sent to customers. Mot. at 4. Defendant asserts that, consistent with Plaintiff's work restrictions,

the QAM position "did not require typing of more than an hour per day, lifting over five pounds, or over the shoulder use." *Id.*

As described above, Plaintiff has produced evidence that a supervisor considered the job to involve paperwork and no lifting over five pounds, that he was asked to perform tasks that seem to have no relation to photographing slabs (and that were not within the aforementioned supervisor's description of the position), and that photographing the slabs actually involved physically moving the slabs. These facts are sufficient to show that there is a triable issue of material fact regarding the essential functions of the QAM position—and, consequently, whether the QAM position was a genuine attempt at a reasonable accommodation.

Accordingly, the Court DENIES Defendant's Motion for Summary Judgment on Plaintiff's actual and perceived disability discrimination claims (Claims 1 and 2), as they relate to the QAM position.

## 2. Failure to Accommodate Claim (Claim 3)

"An employer . . . has an affirmative duty to make reasonable accommodation(s) for the disability of any . . . employee if the employer . . . knows of the disability, unless the employer or other covered entity can demonstrate, after engaging in the interactive process, that the accommodation would impose an undue hardship." 2 Cal. Code Regs. § 11068.

The elements of a failure to accommodate claim are (1) Plaintiff has a disability, (2) Plaintiff could perform the job's essential functions with reasonable accommodation, and (3) the employer failed to make such reasonable accommodations. *Scotch v. Art Inst. of Calif.*, 173 Cal. App. 4th 986, 1009–10 (2009).

Defendant argues that Plaintiff cannot show that any accommodations or open positions existed that would "put [Plaintiff] back to work." Mot. at 11. Citing *Holtzclaw*, 795 F. Supp. 2d at 1019, Defendant argues that it is entitled to summary judgment because "there simply was no vacant position within [its] organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation." Mot. at 12.

In opposition, Plaintiff argues that genuine disputes of material fact remain as to the failure to accommodate claim. *See* Opp'n at 17–19. Specifically, Plaintiff argues that Defendant failed to accommodate Plaintiff in four ways. First, Plaintiff points to Defendant's failure to provide Plaintiff with voice recognition software. Opp'n at 17–18. Plaintiff offers excerpts of Brekke's deposition, and states that Plaintiff was denied voice recognition software "because it 'wasn't an adopted and accepted program of the corporation.'" Pl.'s SGDMF No. 65. Plaintiff characterizes this as "ridiculous." Opp'n at 18. The Court disagrees with Plaintiff's characterization of Brekke's deposition testimony. In his deposition, Brekke makes clear that the initial decision to not provide voice recognition software was based on the apparent short-term nature of Plaintiff's typing limitation. *See* Plaintiff's Compendium of Exhibits in Support of Opposition (Dkt. 26) Ex. B ("Brekke Depo.") at 58:1–6, 9–11; 59:5–10, 16–18. Indeed, there was no indication that Plaintiff's initial restrictions were meant to last for longer than one or two weeks. *See* Declaration of Samson C. Huang (Dkt. 21-5) Ex. E at 94 (prescribing physical therapy for two weeks and a one-week follow up appointment).

Further, as explained under Claims 1 and 2 above, Plaintiff has presented no evidence that the voice recognition software would actually have enabled him to perform the essential functions of the RAR position. At this point, the parties have had the opportunity to engage in discovery. Plaintiff has identified one model of voice recognition software and there is evidence that this software was discussed as part of the initial interactive process (*i.e.* the initial communications regarding Plaintiff's earliest set of work limitations). *See* Pl.'s SGDMF Nos. 62, 63. However, Plaintiff presents no evidence that this specific accommodation was reasonable and available at any particular point during the relevant time period. It is also not clear at what point(s) Plaintiff believes this accommodation was required; the briefing seems to focus on the initial work-at-home period. Because Plaintiff has failed to show that he would have been able to fulfill the essential functions of the RAR position with the use of the voice recognition software, Plaintiff has not provided the evidence necessary to support his failure to accommodate claim based on the failure to provide voice recognition software.

Second, Plaintiff argues that after allowing Plaintiff to work from home on a part-time basis, Defendant "rejected the accommodation and forced [Plaintiff] on worker's compensation leave" in order to "use the worker's compensation to supplement his salary." Opp'n at 18. The parties dispute whether or not Plaintiff was able to complete his required tasks while working from home. *See* Pl.'s SGDMF No. 22. "When an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of absence." 2 Cal. Code Regs. § 11068. As explained above, Plaintiff has failed to present evidence that he could actually perform the essential functions of the RAR role with any particular reasonable accommodation. In addition, the Court finds that Plaintiff has not produced sufficient evidence to create a triable issue of fact on the issue of whether Plaintiff was "forced" on leave in October 2014. However, Plaintiff has provided undisputed evidence that a Warehouse Supervisor position was available in December 2014, while Plaintiff was on leave and at the time that he came off of leave. Opp'n at 7; Pl.'s SGDMF No. 83. As explained more fully in Section IV(A)(3) *infra*, reassignment to an open position can be a reasonable accommodation. Plaintiff offers evidence that his immediate supervisor was open to Plaintiff taking the open position, Pl.'s SGDMF No. 83, suggesting that Plaintiff was qualified for the position. Plaintiff alleges he was never offered the position. *Id.* This is sufficient to demonstrate that there is a triable issue of material fact regarding the availability of an accommodation other than a leave of absence at the time of Plaintiff's first leave.

Third, Plaintiff argues that Defendant failed to accommodate Plaintiff by requiring Plaintiff to perform physical tasks in the QAM position that conflicted with Plaintiff's work restriction. Opp'n at 19. As explained above, the Court finds that there is a triable issue of material fact regarding the essential functions of the QAM position—the second element of a failure to accommodate claim. Thus, the Court cannot determine whether there was a reasonable accommodation available that would have allowed Plaintiff to fulfill the essential functions of the QAM position. *See Scotch*, 173 Cal. App. 4th at 1009–10 (requiring plaintiff to show he could perform the job's essential functions with reasonable accommodation and that employer failed to make such reasonable accommodations).

Fourth and finally, Plaintiff argues that Defendant failed to accommodate him by "forcing [Plaintiff] to take FMLA leave" in August 2015 and refusing to provide "extended leave" when Plaintiff's leave expired in November 2015. Mot. at 19. Plaintiff has not produced sufficient evidence to demonstrate a triable issue of material fact on whether he was "forced" on leave in August 2015. Further, under CFRA, Defendant was under no obligation to hold Plaintiff's job open longer than twelve weeks, *see* Section B(1), *infra*—and Plaintiff provides no authority for that proposition. Although an extended leave can serve as a reasonable accommodation, an employer is not required to provide an indefinite leave of absence as a reasonable accommodation. 2 Cal. Code Regs. § 11068. The Court finds no evidence indicating when Plaintiff would have been able to return to work. It is undisputed that Plaintiff remained on temporary total disability until about August 2016. Pl.'s SGDMF No. 53. While Plaintiff's worker's compensation status is not dispositive as to Plaintiff's actual ability to perform various job functions, it is the only evidence before the Court regarding the period after Plaintiff's twelve-week leave expired. Accordingly, Plaintiff cannot overcome summary judgment on his failure to accommodate claims on the basis of Defendant failing to extend Plaintiff's FMLA/CFRA leave.

Because there is a triable issue of material fact regarding both the availability of an open position at the time of Plaintiff's first leave and the essential functions of the QAM position, the Court DENIES Defendant's Motion for Summary Judgment on Plaintiff's failure to accommodate claim (Claim 3).

### 3. Failure to Engage in the Interactive Process Claim (Claim 4)

"Under FEHA, an employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability. . . . FEHA requires an informal process with the employee to attempt to identify reasonable accommodations[.]" *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 379 (2015) (citing *Wysinger v. Automobile Club of Southern Calif.*, 157 Cal. App. 4th 413, 424 (2007); *Wilson v. County of Orange*, 169 Cal. App. 4th 1185 (2009)).

"To prevail on a claim for failure to engage in the interactive process, the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred." *Id.* (citing *Scotch*, 173 Cal. App. 4th at 1018). Under FEHA, a reasonable accommodation is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." *Cuiellette v. City of Los Angeles*, 194 Cal. App. 4th 757, 766 (2011) (quoting *Nadaf–Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal. App. 4th 952, 974 (2008)). "If the employee cannot be accommodated in his or her existing position and the requested accommodation is reassignment, an employer must make affirmative efforts to determine whether a position is available." *Id.* (citing *Spitzer v. The Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1389 (2000)). A reassignment is not required if there is no vacant position for which the employee is qualified. *Id.* An employer's duty to reassign a disabled employee who cannot otherwise be accommodated does "not require creating a new job, moving another employee, promoting the disabled employee or violating another employee's rights . . . ." *Spitzer*, 80 Cal. App. 4th at 1389. Rather, the employer has a duty "to reassign a disabled employee if an already funded, vacant position at the same level exists." *Id.* (internal citations omitted).

Here, there is undisputed evidence that a Warehouse Supervisor position was available at the time of Plaintiff's first leave—or at least at the time that leave ended in December 2014. Opp'n at 7; Pl.'s SGDMF No. 83. Defendant conceded at oral argument that this position was available. Plaintiff has offered evidence that Plaintiff's immediate supervisor was interested in having Plaintiff step into that position, suggesting that Plaintiff was qualified for the role. *See* Pl.'s SGDMF No. 83. Thus, Plaintiff has identified a reasonable accommodation that was available at the time that the interactive process occurred—or should have occurred, under Defendant's continuing obligation to engage.

While the burden is on the employee to initiate the process, and "the obligation arises once the employer becomes aware of the need to consider an accommodation." *Scotch*, 173 Cal. App. 4th at 1013 (citing *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 62 n.22 (2006)). "[T]he employer's obligation to engage in the process in good faith is continuous" and

"extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Id.*

California Courts of Appeal have recognized the fact that "the employee does not have the same access to information as the employer and therefore the interactive process is important in determining what accommodations are available." *Id.* at 1018.  Accordingly, courts have found that

> Section 12940(n), which requires proof of failure to engage in the interactive process, is the appropriate cause of action where the employee is unable to identify a specific, available reasonable accommodation while in the workplace and the employer fails to engage in a good faith interactive process to help identify one, but the employee is able to identify a specific, available reasonable accommodation through the litigation process.

*Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 983 (2008).

As described above, Defendant and Plaintiff did engage in an initial interactive process when they discussed the possible use of voice recognition software during Plaintiff's initial, apparently short-term restriction period. The Court finds that the initial refusal to provide this software was not a failure to engage in the interactive process. However, this initial engagement does not relieve Defendant of its continuing obligation to engage in the interactive process "where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Scotch*, 173 Cal. App. 4th at 1013. Defendant asserts that after working for one week at home with the typing limitation, "Plaintiff fell behind on his claims, missed scheduled telephone conference calls," and otherwise was not able to complete his work. Pl.'s SGDMF No. 22. Defendant was very clearly "aware that the initial accommodation" of part-time work from home was "failing," because it asserts that it "determined Plaintiff could not perform the essential duties of the RAR position" and "thereafter placed Plaintiff on medical leave." *Id.* Nos. 23, 24. There is no evidence that Defendant engaged with Plaintiff at all once

Defendant was aware that the initial accommodation failed. Rather, while Plaintiff was on leave, Defendant's management exchanged emails joking about forcing Plaintiff to paint and re-paint walls, and inquiring about when they could let Plaintiff go. *See* Pl.'s SGDMF Nos. 78, 80.

The Court finds there is a triable issue of material fact regarding Defendant's failure to engage in the interactive process after the initial accommodation—part-time work from home—failed. Accordingly, the Court DENIES Defendant's Motion for Summary Judgment on Plaintiff's failure to engage claim.

### 4.  Failure to Prevent Discrimination (Claim 5)

FEHA makes it unlawful for "an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). "In the absence of a triable claim for disability discrimination, [a] claim for failure to prevent discrimination fail[s] as a matter of law." *Jennifer Schoultz v. Wells Fargo Bank, N.A.*, No. 15-55326, 2016 WL 6819704, at *1 (9th Cir. Nov. 18, 2016) (citing *Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998)). The existence of discrimination is an "essential foundational predicate" of a failure to prevent discrimination claim. *See Trujillo*, 63 Cal. App. 4th at 289.

As explained above, Plaintiff's FEHA discriminations claims—as they relate to the QAM position—survive summary judgment. Accordingly, the Court DENIES Defendant's Motion for Summary Judgment on Plaintiff's failure to prevent disability discrimination claim.

### B.  Retaliation (Claims 6 and 7)

#### 1.  Under CFRA

CFRA is a portion of FEHA that provides protections to employees needing family leave or medical leave. *Neisendorf v. Levi Strauss & Co.*, 143 Cal. App. 4th 509, 516 (2006). CFRA makes it unlawful for an employer to "discharge, fine, suspend, expel, or discriminate against, any individual because of . . . [a]n individual's exercise of the right to family care and medical leave[.]" Cal. Gov't Code § 12945.2(l)(1). CFRA entitles eligible employees to take up to

twelve weeks of unpaid medical leave during a twelve–month period for certain personal or family medical conditions. *Neisendorf*, 143 Cal. App. 4th at 516. A plaintiff can establish a prima facie case of retaliation in violation of CFRA by showing that: (1) the defendant was a covered employer; (2) the plaintiff was eligible for CFRA leave; (3) the plaintiff exercised his or her right to take a qualifying leave; and (4) "the plaintiff suffered an adverse employment action *because he or she exercised the right to take CFRA leave*." *Rogers v. Cty. of Los Angeles*, 198 Cal. App. 4th 480, 491(2011) (emphasis in original).

There seems to be no dispute over the first three elements of this claim, although Plaintiff in turn suggests that he was "forced" on leave and that he "requested" leave. *See* Opp'n at 18; Compl. ¶ 55. Thus, the Court must determine whether Plaintiff has produced sufficient evidence to raise a triable issue of fact as to whether his termination—indisputably an adverse employment action—happened *because* he exercised his right to take CFRA leave.

To begin with, the bases of Plaintiff's retaliation claims are unclear. In his Complaint, Plaintiff alleges that he "requested and took a leave of absence" and that Defendant "placed Plaintiff on FMLA/worker's compensation leave of absence from August 13, 2015 to November 5, 2015." Compl. ¶¶ 55, 9. On November 6, 2015, Plaintiff was allegedly told that he was terminated because his FMLA leave had expired. *Id.* ¶12. Defendant sent Plaintiff a letter to the same effect. *Id.* ¶ 13. Defendant's letter to Plaintiff is dated November 10, 2016 and states in part:

> Your current leave . . . expired on November 5, 2015. We are sending this letter to help you understand what this means to you regarding your status and benefits with Cambria.
>
> Because your FMLA leave protection has expired, we will no longer hold your job open for your return, and are changing your employment status accordingly.

Declaration of Samson C. Huang Ex. D. Accordingly, Plaintiff alleges that Defendant "retaliated and discriminated against Plaintiff after he exercised his right to take time off . . . by terminating his employment, among other things." *Id.* ¶ 57.

After the twelve weeks of CFRA leave expires, an employee is entitled to be returned to the same position the employee held when leave commenced, or to a comparable position. Gov. Code, § 12945.2(a). However,

> while an employer's duties under the FEHA include extending reasonable accommodations to an employee if reasonable accommodations will enable the employee to perform his or her essential duties, there is no similar provision in the CFRA requiring an employer to provide reasonable accommodation to an employee returning from CFRA leave.

*Neisendorf*, 143 Cal. App. 4th at 517. Thus, if an employee is unable to return to work or perform an essential function of the position at the time that the twelve-week CFRA leave ends, CFRA does not require an employer to reinstate the employee. This "reasoning finds substantial support in cases decided under the FMLA holding that an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12–week period of statutory leave." *Id.* at 518.

Although Plaintiff declares that he has always "felt" able to perform the essential functions of the RAR role, it is undisputed that he remained on total temporary disability until about August 2016. Pl.'s SGDMF No. 53. More importantly, as explained above, Plaintiff provides no evidence that he actually would have been able to fulfill the RAR position even with reasonable accommodation—which, as noted, is not required under CFRA.

However, if a "comparable" position was available at the time Plaintiff's leave expired, Defendant had a duty to reinstate Plaintiff—as long as Plaintiff could fulfill the position. The Court finds, and the parties agreed during oral argument, that there is no evidence that there was a comparable position available in November 2015.[3]

---

[3] Plaintiff asserts that in November 2015, Defendant had an "open Warehouse Supervisor/Warehouse Lead" position. Pl.'s SGDMF No. 51. In the cited deposition excerpt, Plaintiff's counsel asks Brekke whether Plaintiff "was assigned the [QAM] when he returned from his leave in December of 2015; correct?" Brekke Depo. at 86:2–4. Brekke replies, "That sounds right,

1    Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on

2    Plaintiff's CFRA retaliation claim.

3                           **2.  Under FEHA**

4    "The *McDonnell Douglas* burden-shifting test also governs retaliation claims."

5    *Holtzclaw*, 795 F. Supp. 2d at 1019 (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir.

6    1987)). To establish a prima facie case of FEHA retaliation, Plaintiff must show that (1) he

7    engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there

8    was a causal link between the protected activity and the adverse employment action. *Id.* To

9    establish the causation element, Plaintiff must show that "engaging in the protected activity was

10   one of the reasons for his firing and that but for such activity he would not have been fired."

11   *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064–65 (9th Cir. 2002).

12           Under his FEHA retaliation claim, Plaintiff specifically alleges that "Defendant[]

13   retaliated against Plaintiff by adversely affecting Plaintiff's employment after he notified

14   Defendant[] of his disability and/or need for medical leave and/or request(s) for

15   accommodation." Compl. ¶ 63. Similarly, in his Opposition, Plaintiff alleges that "soon after"

16   he complained about pain caused by the QAM role, Plaintiff was "forced" on leave and

17   subsequently fired. Opp'n at 20. "Notifying one's employer of one's medical status, even if

18   such medical status constitutes a 'disability' under FEHA, does not fall within the protected

19   activity . . . ." *Moore v. Regents of the Univ. of California*, 248 Cal. App. 4th 216, 247 (2016).

20   Thus, to the extent Plaintiff alleges he was retaliated against for reporting that the tasks required

21   of the QAM position caused him pain due to his injury, he was not engaging in protected

22   activity.

23           "A term of leave from work can be a reasonable accommodation under FEHA, and,

24   therefore, a request for leave can be considered to be a request for accommodation under

25   FEHA." *Moore v. Regents of the Univ. of California*, 248 Cal. App. 4th 216, 243 (2016) (citing

26   *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (1999)). Although the argument is

27

28   _____
yes." *Id.* at 86:5. This date appears to be a transcription error or a misstatement, as Plaintiff was assigned to the QAM role in December 2014. *See* Pl.'s SGDMF Nos. 24, 25.

hidden in a footnote, Defendant points out that requests for accommodation that pre-date January 1, 2016 do not constitute "protected activity" as a matter of law. Mot. at 13 n.1. Section 12940 was amended in 2015, effective January 1, 2016. *Moore*, 248 Cal. App. 4th at 245–246. Prior to the amendment, "a request for an accommodation, without more, was insufficient to constitute 'protected activity'" and could not support a claim for retaliation in violation of FEHA. *Id.* at 247. The amendment is not retrospective in application. *Id.* Plaintiff was on leave from October 3, 2014 to sometime in December 2014, and again from August 13, 2015 to November 5, 2015. Pl.'s SGDMF No. 24; Declaration of Samson C. Huang Ex. D. Thus, to the extent that Plaintiff alleges that he was retaliated against because he requested leave or other accommodation, Plaintiff is not entitled to recovery on a retaliation claim under FEHA.

Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's retaliation claims under FEHA.

## C. Wrongful Termination in Violation of Public Policy (Claim 8)

"An employer may not discharge an at will employee for a reason that violates fundamental public policy. This exception is enforced through tort law by permitting the discharged employee to assert against the employer a cause of action for wrongful discharge in violation of fundamental public policy." *Stevenson v. Superior Court*, 16 Cal. 4th 880, 887 (1997). "[T]o support a tortious wrongful discharge claim, a fundamental public policy must be grounded on either constitutional or statutory provisions." *Id.* at 893. FEHA represents a public policy against disability discrimination. *C.f. Prue v. Brady Co./San Diego, Inc.*, 242 Cal. App. 4th 1367, 1380 (2015) (finding plaintiff alleged sufficient facts to make out a cause of action for wrongful termination in violation of "FEHA's public policy against disability discrimination").

Here, although Plaintiff also cites to CFRA in his Complaint, Compl. ¶ 71, Plaintiff's Opposition makes it clear that he grounds his wrongful termination claim in his FEHA claims. Opp'n at 20 ("Because Latham has viable claims for violation of the FEHA, it necessarily follows that a triable issue exists with respect to the cause of action for wrongful termination in violation of public policy." (internal alterations and quotations omitted)).

As explained above, the Court denies summary judgment for Defendant on Plaintiff's discrimination and failure to engage in the interactive process claims. Accordingly, Plaintiff's wrongful termination claim can proceed on the basis of those claims. The Court thus DENIES Defendant's Motion for Summary Judgment on Plaintiff's wrongful termination claim.

### D. Declaratory Relief (Claim 9)

Plaintiff asks the Court for "a declaration that his disability, perceived disability, age, and/or other protected categories was a substantial motivating factor in the decision to terminate him." Compl. ¶ 80. However, Plaintiff has made no claims about age discrimination or any other protected category, other than disability. Plaintiff seeks this declaration "for himself and on behalf of employees of the State of California." *Id.* However, Plaintiff is not an employee of the State of California. It is apparent that Plaintiff's declaratory relief claim is merely unedited boilerplate. Moreover, Plaintiff's declaratory relief claim asks the Court to declare that Defendant in fact discriminated against Plaintiff, which is redundant because it asks the Court to state that Plaintiff prevails on the other claims he has brought against Defendant. Perhaps realizing these errors, Plaintiff makes no argument regarding his declaratory relief claim in his Opposition.

The Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's declaratory relief claim.

### E. Punitive Damages

Under each substantive claim in his Complaint, Plaintiff alleges that Defendant "act[ed] in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner and in conscious disregard for the rights and safety of Plaintiff." *See, e.g.*, Compl. ¶ 23. On this basis, Plaintiff alleges that he is entitled to an award of punitive damages. *See, e.g.*, *id.*

As explained above, the Court grants summary judgment for Defendant on all of Plaintiff's claims except Claims 1 and 2 (as related to the QAM position), 3, 4, 5, and 8. Accordingly, Plaintiff cannot be entitled to punitive damages based on Claims 1 and 2 (as related to the RAR position), 6, 7, or 9.

Punitive damages are available under Cal. Civ. Code § 3294 "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, . . ." Malice is defined in as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). Oppression is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ. Code § 3294(c)(2). *See Cloud v. Casey*, 76 Cal. App. 4th 895, 911 (1999). Punitive damages are properly awarded "when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate." *Wysinger v. Auto. Club of S. California*, 157 Cal. App. 4th 413, 428 (2007) (citing *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*, 185 Cal. App. 3d 1149, 1154 (1986)).

Here, Defendant argues that none of the Cambria employees involved in the facts laid out above were "managing agents" for the purposes of corporate liability for punitive damages. Mot. at 14; *see* Cal. Civ. Code § 3294(b). Defendant also argues that Plaintiff "has provided no evidence to show that anyone at Cambria acted with malice, oppression, [or] fraud." Mot. at 15. Plaintiff, in opposition, argues that "there is ample evidence that officers, directors, and managing agents . . . were directly involved in failing to accommodate [Plaintiff], discriminating against him, forcing him out on leave and terminating him." Opp'n at 21. Plaintiff does not cite to the record in support of this argument. However, Plaintiff also offers evidence of Defendant's CEO telling management to "[h]ave [Plaintiff] paint every wall . . . and then when he's done with that, have him paint the . . . walls again." Pl.'s SGDMF No. 78. Plaintiff also offers evidence that the President of Cambria California emailed management and asked "[i]f we put [Plaintiff] in a new position and later determine it isn't working out, how long do we need to keep him employed before moving on? 90 days?" *Id.* No. 81. The Court finds these emails strongly suggestive of the existence of oppression, fraud, or malice—and particularly of a conscious disregard of Plaintiff's rights. For this reason—and because the Court finds there are triable issues of material fact regarding Claims 1 and 2 (as related to the

QAM position), 3, 4, 5, and 8—the Court will not grant summary judgment for Defendant on punitive damages. The Court therefore DENIES Defendant's Motion for Summary Judgment on Plaintiff's request for punitive damages.

### F. Cross-Motion for Summary Judgment

Plaintiff's Opposition was filed on November 28, 2016. Plaintiff included a Cross-Motion for Summary Partial Judgment in the same filing. Under Local Rule 6-1, "notice of [a] motion shall be filed with the Clerk not later than twenty-eight (28) days before the date set for hearing." Hearing in this matter was noticed for December 19, 2016, which was also the motion cut-off date in this case. *See* Scheduling Notice (Dkt. 18).

Accordingly, Plaintiff's Cross-Motion was untimely, both under the Local Rules and under this Court's Scheduling Order. The Cross-Motion portion of Plaintiff's filing (pages 23–25) is therefore STRICKEN.

### V.    DISPOSITION

For the reasons explained above, the Court GRANTS IN PART Defendant's Motion for Summary Judgment or Partial Summary Judgment. Summary judgment is granted for Defendant on Plaintiff's Claims 1 and 2 regarding the RAR position, and Claims 6, 7, and 9. Summary judgment is denied on Plaintiff's Claims 1 and 2 regarding the QAM position, and Claims 3, 4, 5, and 8. The Court also DENIES summary judgment on Plaintiff's request for punitive damages. Finally, the Court also STRIKES Plaintiff's Cross-Motion for Partial Summary Judgment.

DATED:  January 12, 2017

_David O. Carter_

_____

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE